against Harding and Grimes, and Williams was acquitted.

Harding was sentenced to three years imprisonment and fine of $1. Grimes to one year imprisonment and a like fine.

## Case No. 15,302.

### UNITED STATES v. HARE.

### [1 Cranch, C. C. 82.] [1]

Circuit Court, District of Columbia. April Term, 1802.

#### COMPETENCY OF WITNESS—INTEREST.

Upon a trial for larceny, the owner of the stolen goods is a competent witness in chief, upon filing with the clerk of the court, for the use of the prisoner, a release of the witness's right to one half of the fine which the court might impose.

[Cited in U. S. v. M'Cann, Case No. 15,655; U. S. v. Tolson, Id. 16,530. Followed in U. S. v. Brown, Id. 14,657.]

Indictment [against John Hare] for stealing a pocketbook and money from Anthony Conrad. This indictment was under the act of congress of April 30, 1790, § 16 (1 Stat. 112), which imposes a fine of fourfold the value of the goods stolen, and gives one half of that fine to the owner of the goods.

Mr. Mason, for the United States, offered Conrad, the owner of the goods as a witness, and produced a release from Conrad to the prisoner of the half of the fine which might be imposed.

Mr. Jones, for the prisoner, objected that the release cannot operate to convey a mere right to an uncertain future, contingent possibility. Besides, as it is not delivered to the prisoner, he will not accept it.

THE COURT ordered the witness to be sworn, on his delivering the release to the clerk and filing it in the cause.

CRANCH, Circuit Judge, doubted.

## Case No. 15,303.

### UNITED STATES v. HARE et al.

### [4 Sawy. 653.] [2]

Circuit Court, D. California. Oct. 28, 1867.

LAND TITLES IN CALIFORNIA—NATURE OF PUEBLO TITLES — EXECUTION AND SALE — CONTROL BY GOVERNMENT — GRANTS AND RESERVATIONS BY MILITARY AUTHORITIES—SAN FRANCISCO PUEBLO LANDS.

1. The existence of a Mexican pueblo at the site of the present city of San Francisco, on July 7, 1846, its possession of an interest in lands to the extent of four square leagues, and the succession of the present city to such interest, having been judicially settled in a controversy between the city and the United States, are matters no longer open to discussion.

2. Lands within the limits of the pueblo of San Francisco were not subject to levy and sale under judgment and execution against the city.

3. The lands of the pueblo of San Francisco were not held in absolute property, with full right of alienation and disposition, but were subject to the control and disposition of the government until the title passed to private parties; and this right of control and disposition, which existed in the former government, passed upon the cession of the country to the United States, and could afterward be exercised by them at any time before the property had passed to third parties by the action of the pueblo authorities in accordance with existing laws.

4. The officers of the United States army who occupied California prior to the organization of the state government, had no power to grant or dispose of, or to reserve from grant or disposition, any portion of the pueblo lands or any portion of the public property of the United States; they could in no respect impair any rights which the United States may have acquired over either by the conquest or might subsequently acquire by treaty.

5. The attempted grant to San Francisco by Gen. Kearny, on March 10, 1847, of the beach and water lots was an act beyond his authority to execute, and passed no interest whatever.

6. The attempted selection by Major Hardie, on July 18, 1847, of a government reserve at Rincon Point in San Francisco, was invalid: such appropriation could only have been made by act of congress or order of the president.

7. While the president of the United States was authorized in particular cases to reserve from sale for public uses portions of the public lands, no such power was vested in the head of any subordinate departments of the government. The secretary of the treasury could not execute nor approve of a lease of any property belonging to the United States without special authority of law.

8. Parties who obtained conveyances from the city of San Francisco, whilst its claim for pueblo lands was pending before the United States tribunals, took whatever interest they acquired subject to the determination of the claim.

9. The final decree in the San Francisco pueblo case took effect, by relation, on the day when the petition was presented to the land commission in July, 1852, and is to be considered as if entered on that day.

10. The term "grants" in the final decree of the San Francisco pueblo case, declaring that the confirmation is in trust for the benefit of lot holders under grants from the pueblo, town or city, comprehends all previous conveyances from the city.

This was an action for the possession of certain real property situated on Rincon Point, in the city of San Francisco, being a portion of lots five and six of the block lying between Folsom and Harrison streets, and between Main and Spear streets. It was tried at the October term, 1867, by the court, without the intervention of a jury by stipulation of the parties. On the trial the plaintiffs produced and gave in evidence the proceedings and decree in the San Francisco pueblo case, and proved that the premises in controversy were within the limits defined by said decree. They also produced, proved and read in evidence the following documents, numbered from 1 to 14 inclusive:

(No. 1.)

I. Brigadier-General S. W. Kearny, governor of California, by virtue of authority in

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]